Elizabeth D. Tate, SBA # 32659
2953 North 48th Street
Phoenix, AZ 85018-7749
Phone: (602) 670-4653
Fax: (602) 595-5959
E-mail: attorneyelizabethtate@yahoo.com
Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Rene Mendoza,**  a single man, | **Case # 4:18cv00479** |
| **Lani Salazar,**  a married woman, | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Lionel Salazar,**  a married man, | |
| Plaintiffs, | |
| v. | |
| **Rio Rico Medical & Fire District,** | |
| **Albert Ibarra,**  a married man, | |
| **Carmen Ibarra** | |

**a married woman,**

**Al Flores,**
**a married man,**

**Beatrice Flores,**
**a married woman,**

Defendants.

Plaintiffs Rene Mendoza ("Mendoza"), Lani Salazar (" Mrs. Salazar") and Lionel Salazar ("Mr. Salazar") by and through Elizabeth D. Tate, their undersigned attorney of record, submits this Complaint and Demand for Jury Trial pursuant to Federal Rules of Civil Procedure, Rules 7(a)1, 8(a & d), 15(a), and 38(a & b).

## 1. Parties, Claims, and Jurisdiction

1. The Plaintiff, Rene Mendoza is and has been always material to this Complaint, a single, adult, male, resident of Pima County, Arizona and former fire fighter at Rio Rico Medical & Fire District.

2. The Plaintiff, Lani Salazar, is and has been always material to this Complaint, a married, adult, female, resident of Pima County, Arizona and former fire fighter Captain at Rio Rico Medical & Fire District.

3. The Plaintiff, Lionel Salazar, is and has been always material to the Complaint, an adult, male, resident of Pima County, Arizona married to Plaintiff, Lani Salazar, for the last 21 years.

4. Defendant Rio Rico Medical & Fire District. ("RRMFD") has been always material to this Complaint:

(A) A governmental entity engaged in interstate commerce employing approximately 34 persons, providing fire protection, medical rescue services, public education and fire protection to the residents of Santa Cruz County, Arizona;

(B) The employer of Mendoza and Salazar as that term is used and as defined by 42 U.S.C. §2000e (b), 29 U.S.C. §2611(4) and 42 U.S.C. 12111(5)

5. Defendants Albert Ibarra, " Mr. Ibarra" and Carmen Ibarra are husband and wife; and that Defendant, Mr. Ibarra, acted pursuant to and on behalf of the marital community. Mr. Ibarra is a Captain at RRMFD and was the supervisor of Mendoza.

6. Defendants Al Flores, "Mr. Flores" and Beatrice Flores are husband and wife; and that Defendant, Mr. Flores, acted pursuant to and on behalf of the marital community. Mr. Flores is former Fire Chief of RRMFD and was responsible for all aspects of the operations of RRMFD at the times relevant to this Complaint.

7. Mendoza and the Salazar's seek relief against the Defendants herein on their claims arising under federal statutes and state law as follows:

Count One: Sex Discrimination in violation of Title VII, 42 U.S.C. §2000e – Hostile Work Environment.

Count Two: Retaliation in violation of Title VII, 42 U.S.C. §2000e for having reported sex discrimination. A

Count Three: Common Law Battery

Count Four: Common Law Assault

Count Five: Intentional Infliction of Emotional Distress

Count Six: Loss of Consortium

Count Seven: Violation of A.R.S. 23-1501 Arizona Employment Protection Act

8. Based upon the foregoing, this Court is the proper venue is proper pursuant to 28 U.S.C. 1692(b).

## 2. Additional fact allegations supporting claims

9. RRFMD hired Mendoza as a firefighter in January of 2016. Mendoza began working his position in April of 2016. On November 7, 2017, Mendoza went to RRMD's Fire Station Number 2 with Captain Cluff to bring Mr. Ibarra a fire truck to be used probationary training. Around 11:00 a.m. as Mendoza stood by a metal storage box at a break area, Mr. Ibarra saw Mendoza and for no reason, suddenly struck Mendoza in the testicles with a flexible antenna from a radio. Mr. Ibarra intentionally engaged in an act that resulted in harmful, offensive and outrageous conduct of hitting Mendoza in the testicles which was atrocious and utterly intolerable by society and went beyond all bounds of decency. Ibarra placed Mendoza in imminent apprehension of Ibarra striking him. Mendoza did not consent to being struck by Mr. Ibarra and the conduct was unwelcome.

10. Ibarra engaged in extreme and outrageous conduct against Mendoza that caused Mendoza severe emotional distress. Ibarra disregarded the near

1 certainty that Mendoza would be emotionally distressed by being struck in the
2 testicles with a flexible antenna from a radio.

3 11. RRMFD hired Mrs. Salazar on December 11, 2006. Mrs. Salazar began
4 as a firefighter emergency technician" EMT".  RRMFD promoted Mrs. Salazar
5 to Captain in July of 2016.

6 12. Mr. Flores supervised Mrs. Salazar, first as battalion chief and later as
7 fire chief.  Mr. Flores began sexually harassing Salazar when Mr. Flores
8 served as battalion chief.  When RRMFD  promoted Mrs. Salazar to Captain
9 in 2017,  Mr. Flores informed Mrs. Salazar of her promotion and  kissed Mrs.
10 Salazar on her mouth. Mrs. Salazar did not  want to be kissed. Shocked by
11 Flores' outrageous act, Salazar asked Mr. Flores why he would do such a
12 thing.  Mr. Flores apologized and claimed that he kissed her because he was
13 excited for her promotion. Mrs. Salazar did not consent to Mr. Flores' conduct
14 and the conduct was unwelcome.

15 13. Despite Flores, insincere apology for kissing her, Flores continued to
16 sexually harass Mrs. Salazar, cornering her in hallways and trying to kiss her.
17 From September 24, 2017 to October 4, 2017, Flores progressed in  sexually
18 harassing Mrs. Salazar to the point where   he repeatedly raped Mrs. Salazar
19 when she was alone at the fire station spending the night for her shift.

20 14. On September 24, 2017,  Mr. Flores waited until all crew members were
21 out on call and came into Mrs. Salazar's bedroom  at the fire station.
22 uninvited. Startled, Mrs. Salazar asked Mr. Flores what he was doing in her
23 room.  Mr. Flores told Mrs. Salazar that he, "just wanted a kiss".  Mr. Flores
24 then proceeded to rape Mrs. Salazar.  Mrs. Salazar fought Mr. Flores but Mr.
25 Flores was still able to penetrate her. After Mr.  Flores finished, he told Mrs.
26

Salazar that he loved her and that eventually she would give in to him. Mrs. Salazar did not tell anyone that Flores raped her because Flores was fire chief and she feared for her job. Mrs. Salazar had reported firefighter Alex Green for sexual harassment of another firefight in the past but RRMFD did nothing about it. Mrs. Salazar hoped Flores would leave her alone.

15. During the weeks between Thanksgiving and Christmas of 2017, Mr. Flores grabbed Mrs. Salazar by the arm and forced her into the fire station gym. Mr. Flores then raped Mrs. Salazar on a gym bench. Mrs. Salazar did not tell anyone at work how Mr. Flores raped her. Mrs. Salazar only told Mr. Salazar how Mr. Flores had been raping her.

16. Mr. Flores intentionally engaged in sexually forcing himself on Mrs. Salazar that resulted in harmful, offensive contact with Mrs. Salazar. Mr. Flores placed Mrs. Salazar in imminent apprehension of being sexually abused and assaulted when he raped her.

17. Mr. Flores engaged in extreme and outrages conduct by intentionally and recklessly disregarding the near certainty that Mrs. Salazar would suffer severe emotional distress from being sexually abused and assaulted. Mr. Flores' acts of sexually abusing and raping Mrs. Salazar were atrocious and utterly intolerable by society and went beyond all bounds of decency.

18. On January 4, 2018, Mr. and Mrs. Salazar sought help from an attorney. Mrs. Salazar then informed Brad Beach and Dean Davis, RRFMD Board Members, that Mr. Flores had been raping Mrs. Salazar but Beach and Davis did not respond. Mr. and Mrs. Salazar also reported Mr. Flores raping her to the Phoenix police for fear that Santa Cruz Sheriff would not her who turned

the investigation of Mr. Flores' conduct over to the Santa Cruz Sheriff anyway.

19. The next day, Mrs. Salazar sought treatment from her doctor who medically released Mrs. Salazar from work to inform RRMFD that Mrs. Salazar could not return to work until RRMFD abated the sexually hostile work environment at RRMFD.

20. The Santa Cruz Sheriff's Deputy Hector Puerta conducted a flawed investigation of Mrs. Salazar's rape allegations. Deputy Puerta provided Mr. Flores' attorney with every detail of Mrs. Salazar's allegations and permitted Mr. Flores' attorney to respond to Mrs. Salazar's reports of rape without ever requiring Mr. Flores to come in for questioning. Deputy Puerta refused to press charges and turned the results of his flawed investigation to the Santa Cruz County Prosecutor. The Santa Cruz County Prosecutor also refused to press charges against Mr. Flores claiming Mrs. Salazar consented to the rapes.

21. RRMFD placed Mr. Flores and Mrs. Salazar on paid administrative leave. RRMFD then appointed Adam Amezaga as acting fire chief to fill in for Mr. Flores. RRMFD selection of Amezaga to fill in Mr. Flores distressed Mrs. Salazar Amezaga even further because Amezaga sexually harassed Mrs. Salazar in 2007, telling her, "Mama, show me some tit. You know sex sells" and repeatedly giving Mrs. Salazar unwanted bear hugs. RRMFD demoted Amezaga for the comments and hugs but later reinstated Amezaga to his original position proceed to promote Amezaga.

22. On January 8, 2018, while serving as acting fire chief, Amezaga retaliated against Mrs. Salazar while she was on paid administrative leave by

blocking her work email so Mrs. Salazar would not know what was going on at RRMFD in her absence. Amezaga also tried to force Mrs. Salazar to use FMLA to cover her absence to declare Mrs. Salazar unfit to serve because Mrs. Salazar engaged in the protected activity of reporting sex discrimination. Chief Amezaga knew that Mrs. Salazar had engaged in protected activity.

23. On January 18, 2018, Mrs. Salazar reported another incident of sexual harassment that occurred in September of 2017 where a firefighter, Ramon Levyas called Mrs. Salazar at home to inform her that he had a sexual dream about her. Mr. Salazar confronted Levyas about his comment to Mrs. Salazar. When Mrs. Salazar arrived at work, Levyas repeated the dream in the presence of their co-workers to further humiliate Mrs. Salazar.

24. RRMFD maintained a hostile work environment that was severe and pervasive enough to alter the conditions of Mendoza and Mrs. Salazar's work environment and was abusive. In 2016, Levyas circulated pornographic pictures to Mendoza and the other male firefighters. Levyas referred to Mendoza as "punani" which is slang for vagina in Hawaiian. Levyas also repeatedly referred to Mendoza as his "bitch" in January and February of 2018. In 2016, Captain Alex Green exposed himself to Mendoza, telling Mendoza, "Oh. Was that inappropriate?" Mendoza complained which amounted to protected activity but was laughed at and told to shut up. The hostile environment continued.

25. In May of 2017, Mr. Flores, who was fire chief at the time, retaliated against Mendoza by continuing Mendoza's probation. Mr. Flores knew that Mendoza protested sex discrimination. On May 31, 2017, Mr. Ibarra downgraded Mendoza in his performance review stating the Mendoza

needed to "improve his attitude toward others" because Mendoza did not welcome the sexually hostile work environment at RRMFD. Mr. Ibarra knew that Mendoza protested sex discrimination. On November 17, 2017, RRMFD terminated Mendoza because Mendoza had protested sex discrimination.

26. On May 15, 2018, during Mrs. Salazar's paid administrative leave, Acting Fire Chief Amezaga issued Mrs. Salazar a Notice of Intent to Dismiss based on false allegations of misconduct. Mrs. Salazar refuted to RRMFD's false allegations but Amezaga fired Mrs. Salazar anyway. RRMFD terminated Mrs. Salazar for reporting the fact that Mr. Flores repeatedly raped her during her employment. RRMFD's termination of Mrs. Salazar was in retaliation for having reported rape in violation of public policy.

27. RRMFD is vicariously liable for the intentional misconduct of its employees. Mr. Ibarra and Mr. Flores used apparent authority to accomplish their wrongful acts are responsible for Mr. Ibarra's and Mr. Flores' actions because Mr. Ibarra and Mr. Flores committed the acts during the scope of their employment. RRMFD had constructive knowledge of Mr. Ibarra's and Mr. Flores acts because RRMFD had investigated sexual harassment before at RRMFD but took no meaningful action to eradicate the sexually hostile environment at RRMF

28. The acts committed against Mrs. Salazar resulted in severe emotional injury to Mrs. Salazar and operated to deprive Mr. Salazar of companionship, comfort, love, affection, protection, support and services that he shared with Mrs. Salazar, his wife of 21 years. Mrs. Salazar bore the burden of being raped by Mr. Flores for months that affected her relationship with Mr. Salazar. After Mrs. Salazar went to her husband for help, Mr. Salazar

suffered the injury of knowing that Mr. Flores had been sexually abusing and assaulting his wife.

29. RRMFD, in contravention of Title VII, permitted a hostile work environment and retaliated against Mendoza and Mrs. Salazar that culminated in Mendoza's and Mrs. Salazar's firings.

30. Mendoza and Mrs. Salazar filed charges of discrimination with the United States Equal Employment Opportunity Commission, "EEOC", under charges numbers 35A-2018-00415 and 35A-2018-00415C respectively and concerning sex discrimination and retaliation in their employment as described above. Mendoza and Salazar received their notices of right to sue on September 18, 2018 and August 24, 2018 respectively See Attached Exhibits 1, 2, 3, 4, 5 and 6, charges of discrimination, notices of right to sue and notices of claim.

### 3. Demand for Trial by Jury

Mendoza, Mrs. Salazar and Mr. Salazar demand a trial by jury on their claims pursuant to the U.S. Constitution Seventh Amendment and FRCP Rule 38.

### 4. Relief Requested

Count One: Title VII hostile work environment as to Mendoza and Mrs. Salazar only and against Defendant RRMFD

1. Compensatory and punitive damages
2. Injunctive relief including back pay and front pay
3. Reasonable attorneys' fees
4. Taxable costs

### Count Two: Retaliation in violation of Title VII as to Mendoza and Mrs. Salazar only and against Defendant RRMFD

1. Compensatory and punitive damages
2. Injunctive relief including back pay and front pay
2. Reasonable attorneys' fees
3. Taxable costs

### Count Three: Common Law Battery as to Mendoza and Mrs. Salazar only and against all Defendants.

1. General tort damages
2. Punitive damages
3. Taxable costs pursuant to FRCP Rule 54(d) 1, LRCiv 54.1 and 28 U.S.C. 1920

### Count Four: Common Law Assault as to Mendoza and Mrs. Salazar only and against all Defendants.

1. General tort damages
2. Punitive damages
3. Taxable costs pursuant to FRCP Rule 54(d) 1, LRCiv 54.1 and 28 U.S.C. 1920

### Count Five: Intentional Infliction of Emotional Distress as to Mendoza and Mrs. Salazar only and against all Defendants.

1. General tort damages

2. Punitive damages

   3. Taxable costs pursuant to FRCP Rule 54(d) 1, LRCiv 54.1 and 28 U.S.C. 1920

Count Six:  Loss of Consortium as to Mr. Salazar only and against all Defendants.

   1. General tort damages

   2. Punitive damages

   3. Taxable costs pursuant to FRCP Rule 54(d) 1, LRCiv 54.1 and 28 U.S.C. 1920

Count Seven: Violation of A.R.S, 23-1501 Arizona Employment Protection Act as to Mrs. Salazar against RRMFD only

   1. Economic and compensatory damages
   2. Taxable costs

Respectfully submitted this 9th day of October 2018.

s/Elizabeth D. Tate
Elizabeth D. Tate, Attorney for Plaintiff

**Attached: Exhibits One through Six**