**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Mendoza, et al., | No. CV-18-00479-TUC-CKJ |
| Plaintiffs, | **ORDER** |
| v. | |
| Rio Rico Medical & Fire District, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Preclude Testimony Regarding Causation from Plaintiffs' Expert Treating Physicians (Doc. 90) and Motion for Partial Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salalzar [sic]; and (iv) Request for Punitive Damages (Doc. 91). For the reasons that follow, Defendants' Motion to Preclude is GRANTED and Defendants' Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART. Defendant Mendoza's Title VII retaliation and IIED claims are DISMISSED. Plaintiffs' remaining claims will proceed to trial.

**JURISDICTION**

The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331, as some of Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a). Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in Santa Cruz County, Arizona.

## BACKGROUND[1]

In 2016 and 2017, there was a fair amount of questionable activity unrelated to firefighting happening at the Rio Rico Medical & Fire District ("District"). That activity involved two of the Plaintiffs in this case, Rene Mendoza ("Mendoza") and Lani Salazar ("Salazar"), and two of the Defendants, Albert Ibarra ("Ibarra") and Al Flores ("Flores"). At the time, Mendoza was a newly hired full-time firefighter and emergency medical technician and Salazar was a recently promoted Fire Captain. Flores was the Battalion Chief, and Salazar's immediate supervisor, and Ibarra was a Fire Captain, and Mendoza's immediate supervisor.

Beginning in July 2016, Flores began sexually harassing Salazar, whose promotion he had recently recommended. What started out as unwelcomed sexual advances soon escalated to alleged incidents of rape, the last of which occurred around the 2017 holiday season. A month earlier, Ibarra had struck rookie firefighter Mendoza in the testicles with a radio antenna, laughed, and ran away. Mendoza was also inundated with countless sexually suggestive images sent to him by a fellow firefighter, who frequently referred to Mendoza using sexually offensive slang terms. Two other firefighters exposed themselves to Mendoza, and when he complained of the harassing behavior to a superior, he was half-heartedly instructed to "write an email about it."

In November 2017, Mendoza was released from the District for failing to successfully complete his probationary period. In January 2018, Salazar came forward with complaints that Flores had raped her while she was on duty. The District Board placed Flores and Salazar on administrative leave and hired an outside investigator to investigate Salazar's allegations. In April 2018, facing termination, Flores submitted his letter of resignation. One month later, Salazar was fired. In September 2018, Plaintiffs brought the suit at hand.

## PROCEDURAL HISTORY

On August 21, 2020, Defendants filed their Motion to Preclude Testimony

---

[1] In the summary judgment context, the Court construes all facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Regarding Causation from Plaintiffs' Expert Treating Physicians (Doc. 90), Motion for Partial Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salalzar [sic]; and (iv) Request for Punitive Damages (Doc. 91), and Statement of Facts to Support Motion for Partial Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salalzar [sic]; and (iv) Request for Punitive Damages (Doc. 92).

On September 4, 2020, Plaintiffs filed their Response to Defendants' Motion to Preclude Testimony Regarding Causation from Plaintiffs' Expert Treating Physicians. (Doc. 93)  On October 5, 2020, Plaintiffs filed their Response to Defendants' Partial [sic] Motion for Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salazar; and (iv) Request for Punitive Damages (Doc. 96) and Plaintiffs Rene Mendoza's and Lionell Salazar's Response to Defendants' Statement of Facts to Support Motion for Partial Summary Judgment: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salazar; and (iv) Request for Punitive Damages (Doc. 97).

On August 9, 2020, Defendants filed their Reply to Support Motion for Partial Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salalzar [sic]; and (iv) Request for Punitive Damages. (Doc. 100)  This Order follows.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The non-moving party may not merely rest on its pleadings but it must identify specific facts that show a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Anderson,* 477 U.S. at 256.  In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in his favor." *Anderson*, 477 at 255.

"Summary judgment is not precluded simply because there is a dispute of some facts in a case." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). "To defeat a motion for summary judgment, the resisting party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or at least create a genuine issue of material fact." *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 460 (D. Ariz. 1996) (citing *Anderson*, 477 U.S. at 249-50). "The moving party is entitled to judgment as a matter of law if the resisting party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof." *Id.* (citing *Celotex,* 477 U.S. at 325). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

**ANALYSIS**

As a preliminary matter, the Court finds there are eleven outstanding claims remaining in this case. Those claims include: (i) Mendoza's Title VII hostile work environment claim against the District; (ii) Salazar's Title VII hostile work environment claim against the District; (iii) Mendoza's Title VII retaliation claim against the District; (iv) Salazar's Title VII retaliation claim against the District; (v) Mendoza's common law battery claim against Ibarra and the District; (vi) Salazar's common law battery claim against Flores and the District; (vii) Mendoza's common law assault claim against Ibarra and the District; (viii) Salazar's common law assault claim against Flores and the District; (ix) Mendoza's intentional infliction of emotional distress ("IIED") claim against Ibarra and the District; (x) Salazar's intentional inflection of emotional distress claim against Flores and the District; and (xi) Mr. Salazar's[2] loss of consortium claim against Flores and the District. Salazar's Arizona Employment Protection Act claim was dismissed in an

---

[2] Lionel Salazar, Lani Salazar's husband.

Order dated March 1, 2019. (Doc. 27)

**I.      Defendants' Motion for Partial Summary Judgment**

In their motion for partial summary judgment, Defendants argue that the Court should rule in their favor on three of Plaintiffs' claims and on the issue of punitive damages. (Doc. 91) Defendants also request oral argument on the matter. *Id*. Because Plaintiffs concede Mendoza's Title VII retaliation claim in response to Defendants' motion for partial summary judgment,[3] the Court is left to resolve Defendants' motion only as to Mendoza's IIED claim, Mr. Salazar's claim for loss of consortium, and Plaintiffs' request for punitive damages. The Court finds oral argument on Defendants' motion unnecessary, as the issues have been fully briefed and oral argument will not aid the Court in its decision.[4] The Court addresses each of Defendants' arguments seriatim.

<u>Intentional Infliction of Emotional Distress</u>

Mendoza's IIED claim involves two District employees and one startling incident. Ibarra was Mendoza's immediate supervisor and was responsible for evaluating Mendoza's performance as a firefighter and a probationary employee of the District. On or around November 7, 2017, Ibarra saw Mendoza standing outside by a tree and hit Mendoza in the testicles with a radio antenna. (Doc. 96 at 3) After striking Mendoza in the testicles with the antenna, Ibarra laughed and ran away. *Id*. Mendoza testified that the contact caused him physical pain for minutes thereafter. (Doc. 92-3, tr. p. 119 at 12)

Defendants argue they should be granted judgment as a matter of law on Mendoza's IIED claim because his evidence fails to meet the heightened threshold for such a claim. (Doc. 91 at 9-10) In support of their argument, Defendants contend that "[w]hile hitting another employee in the testicles with a flexible antennae is certainly inappropriate, it is not so outrageous 'as to go beyond all possible bound of decency' or 'utterly intolerable in a civilized community.' " *Id.* at 9. Defendants also argue that "a few minutes of pain"

---

[3] *See* Doc. 96 at 5 ("In order to present his most viable claims to a jury and to preserve judicial economy, Mendoza consents to dismissal of Count Two, his retaliation claim against RRMFD.").

[4] *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

- 5 -

does not meet the requisite threshold of "severe emotional distress" necessary to establish an IIED claim. *Id*. at 10.

In response, Plaintiffs argue that the nature of the incident between Mendoza and Ibarra should be left to the determination of a jury, as Ibarra's actions demonstrate that Mendoza was the victim of both an assault and IIED. (Doc. 96 at 6) Plaintiffs also argue that courts in other jurisdictions have held that extreme emotional distress can be established through physical impact or serious emotional distress and that Ibarra demonstrated reckless disregard of emotional distress by running off after hitting Mendoza in the groin. *Id*. at 5-6.

The issue for the Court to determine is whether, believing the facts as presented by Plaintiff and drawing all justifiable inferences in his favor, Ibarra's actions rose to the level of "extreme" and "outrageous" conduct and Mendoza presented sufficient evidence of "severe emotional distress" for his claim to proceed to trial.

The tort of intentional infliction of emotional distress requires proof of three elements: (i) defendant's conduct must be "extreme" and "outrageous"; (ii) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (iii) severe emotional distress must occur as a result of defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005). In determining whether a defendant's conduct comes within these parameters, comment h to the Restatement (Second) of Torts § 46 (Am. Law Inst. 1965) provides:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.*

*Id*. (emphasis added).

Because the terms "outrageous conduct" and "severe emotional distress" are not capable of precise legal definition, a case by case analysis is required. *Midas Muffler Shop*

*v. Ellison*, 650 P.2d 496, 500 (Ariz. App. Ct. 1982). "Nevertheless, factors that have been traditionally considered by a jury or court include" the position occupied by the defendant and defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986). "If there is even the slightest doubt or uncertainty in respect to any issue of material fact, the request for summary judgment should be denied." *Id.* at 1016-17. "Moreover, if the state of mind or intent of one of the parties is a material issue, summary judgment is improper." *Id.* at 1017.

While the Court may be inclined to let a jury decide whether the scenario at hand rose to the level of "extreme" and "outrageous" conduct, the same cannot be said for the third and final element of an IIED claim. Arizona courts have concluded that while a plaintiff need not suffer a "disabling response" to the outrageous conduct, any response less than "severe" cannot support an action for IIED and should be rejected. *Pankratz v. Willis*, 744 P.2d 1182, 1191 (Ariz. App. Ct. 1987). In *Midas Muffler Shop v. Ellison*, the Arizona Courts of Appeals offered examples of emotional distress considered "severe" by the courts. 650 P.2d 496, 501 (Ariz. App. Ct. 1982). It observed:

> Examples of emotional distress considered severe by the courts are as follows: plaintiff suffered heart attack and nervous exhaustion; fright caused by collecting agent's conduct resulted in premature birth of dead baby; conduct caused plaintiff to be found writhing in bed in a state of extreme shock and hysteria. She suffered severe nervousness and headaches resulting in such a breakdown of her physical and emotional well being that she was unable thereafter to perform her job; plaintiff suffered severe headaches and stress and her state of anxiety ultimately required hospitalization; telephone calls to plaintiff who suffered from multiple sclerosis caused stress and a relapse resulting in a permanent impairment of her condition.

*Id.* (parentheses and citations omitted).

Believing Mendoza's evidence and drawing all justifiable inferences in his favor, the Court finds that he has failed to demonstrate that he suffered severe emotional distress as a result of Ibarra's conduct. Mendoza's testimony that he was in pain "[j]ust for a little

while"[5] after Ibarra struck him in the testicles—without more—is insufficient for his claim to proceed to trial. The Court also fails to credit Mendoza's citation to a District of Nevada ruling, which reiterated "[g]eneral physical or emotional discomfort is insufficient to demonstrate severe emotional distress" and found that the plaintiff suffered severe emotional distress as demonstrated by "severe headaches, stomach aches, stress and depression" in addition to her psychiatric treatment and being diagnosed with adjustment disorder as a result of a hostile work environment. *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268-69 (D. Nev. 2001). The situation outlined in *Burns* is inapposite to the one at hand. Accordingly, Defendants' motion for partial summary judgment on Mendoza's IIED claim is granted, and the claim is dismissed.

Loss of Consortium

The Salazars assert that Flores sexually harassed and raped Mrs. Salazar in 2016 and 2017, while working on District premises. Mr. Salazar offered the following testimony concerning the impact the sexual assaults had on his marriage:

> She goes in the closet, hides in there and closes the door and cries. . . . It's been not just the closet . . . . She'll start breaking out into crying out of the clear blue. She's scared to be out in public by herself . . . she's scared to be around men in public, if she sees a guy somewhere, she's scared to be there. Me or the kids have to go with her . . . . So yes, it has affected us, still affecting us to this day. . . . Every now and then . . . we get into arguments. It's affected us since the beginning. . . . [Our marital relationship is] not exactly the same . . . . because of the fact when she goes out in public, I have got to go with her everywhere. . . . she's in a panic to go to the store. She's in a panic to go places. Where before she was never in a panic. She is an independent type of woman. . . . She'll wake up in the middle of the night with a nightmare going. She'll go close herself in the closet. . . It affects me to see my wife in the closet crying again. And then I got to tell my children why she's in there, or make up an excuse because I don't want to tell them – make up an excuse why mommy's in the closet . . . . So, yes, it affects our relationship on a day-to-day basis.

(Doc. 96, tr. pp. 128-133 at 41-43)

---

[5] (Doc. 92-3, tr. p. 119 at 12).

Defendants argue that while loss of consortium is a derivative claim which requires Mrs. Salazar to prove the elements of her underlying claims, Mr. Salazar's claim fails as a matter of law because the facts demonstrate that he has not lost the companionship, comfort, love, affection, or support of his wife. (Doc. 91 at 10)  In response, Plaintiffs argue that loss of consortium claims may be proven by a spouse's psychological injury. (Doc. 96 at 6)  Plaintiffs highlight the fact that Mr. Salazar testified to his wife's phobia of going out in public and to the fact that she hides in closets to cry and has nightmares as a result of the sexual assaults.  *Id.*  Plaintiffs also contend that certain elements of a loss of consortium claim must be left to the determination of a jury. *Id*. at 6-7.

The issue for the Court to determine is whether summary judgment is an appropriate avenue for dismissal of a loss of consortium claim when the underlying claim(s) have yet to be resolved.

In *Barnes v. Outlaw*, the Arizona Supreme Court discussed loss of consortium claims in detail.  964 P.2d 484, 487 (Ariz. 1988).  It held:

> Consortium includes "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations." *The purpose of a consortium claim is to compensate for the loss of these elements, which certainly can result from psychological injury as well as physical harm. Clearly, a marriage may be damaged by emotional trauma*. Since loss of consortium is no longer exclusively based on a deprivation of services theory, we see no reason to require physical injury to one spouse before the other may bring a claim.
>
> We do not mean to suggest that in every tort action there exists a corresponding loss of consortium claim. There must first be some basis to infer that affection or companionship was actually lost. *Whether the marital relationship has been harmed enough to warrant damages in any given case is a matter for the jury to decide*.

*Id*. (emphasis added) (citations omitted).  The court also concluded that "because loss of consortium is a derivative claim, all elements of the underlying cause must be proven before the claim can exist." *Id*. (citation omitted); *see also Morley v. Smith*, No. CV04-1874-PCT-ECV, 2007 WL 201233, at *4 (D. Ariz. Jan. 24, 2007).

- 9 -

Mindful that several of Mrs. Salazar's underlying claims are still pending, and in the absence of any persuasive argument to the contrary, the Court finds Defendants' request to dispose of Mr. Salazar's loss of consortium claim to be premature. "To support a loss of consortium claim, marital spouses must allege that their partner suffered an injury that is 'sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired.' " *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1039 (9th Cir. 2008) (quoting *Molien v. Kaiser Found. Hosp.*, 616 P.2d 813, 823 (Cal. 1980)). "The injury may be physical or psychological, but psychological injury must "rise [ ] to the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be] sufficient to substantially disturb the marital relationship." *Id*. There is sufficient evidence in the record, construed in the light most favorable to Plaintiffs, to satisfy the elements of a loss of consortium claim. Additionally, it is a factual matter left to the determination of a jury whether the Salazars' marriage has been sufficiently harmed to warrant damages on Mr. Salazar's loss of consortium claim. Accordingly, Defendants' motion for partial summary judgment on this claim is denied, and Plaintiffs' loss of consortium claim will proceed to trial.

Punitive Damages

As previously outlined, Plaintiffs have a number of claims proceeding to trial. Plaintiffs request punitive damages on their Title VII hostile work environment and retaliation claims against the District, and on their battery, assault, IIED, and loss of consortium claims against all Defendants. (Doc. 8 at 10-12).

Defendants argue that Plaintiffs should be precluded from seeking punitive damages at trial because such damages are unavailable against the District under Title VII, and that the same can be said of claims for punitive damages against public entities and public employees acting within the scope of their employment in Arizona. (Doc. 91 at 11-12) In response, Plaintiffs concede that punitive damages are not available in their Title VII claims against the District. (Doc. 96 at 7) Plaintiffs assert, however, that punitive damages are available in their common law battery claims against Defendants, as Salazar and

Mendoza present prima facie cases of battery and punitive damages are derivative of those claims. *Id.* Plaintiffs argue that to recover punitive damages on their battery claims, they must demonstrate malice, which they assert they have done. *Id.* Plaintiffs also argue that the District is liable for punitive damages since the sexual assaults against Salazar and the battery against Mendoza were committed during work hours. *Id.*

The issue for the Court to determine is whether, as a matter of law, Plaintiffs should be precluded from seeking punitive damages against all Defendants at trial.

"The purposes of punitive damages are to punish a defendant and to deter similar acts in the future." *Ninth Cir. Model Civil Jury Instrs.* 5.5 (2017 ed.). "Punishment is an appropriate objective in a civil case only if the defendant's conduct or motive involves some element of outrage similar to that usually found in a crime." *Gurule v. Ill. Mut. Life & Cas. Co.,* 734 P.2d 85, 86 (Ariz. 1987) (quotation marks and citation omitted). "Where the defendant did not act with an 'evil mind,' compensatory damages usually provide sufficient deterrence." *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1003 (D. Ariz. 2011).

"Prior to 1991, only equitable relief, primarily backpay, was available to prevailing Title VII plaintiffs[.]" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999). "The Civil Rights Act of 1991 amended Title VII to provide for both compensatory and punitive damages." *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1301 (9th Cir.). However, the Act qualifies the availability of punitive awards, stating:

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (emphasis added). Courts in this district have reiterated that punitive damages are not available in Title VII claims against government entities. *See, e.g., Schroeder v. Brennan*, No. CV-17-01301-PHX-JJT, 2019 WL 4278169, at *6 n.1 (D.

- 11 -

Ariz. Sept. 10, 2019); *Lewis v. Arizona*, No. CV 10-2387-PHX-JAT, 2011 WL 3665367, at *6 (D. Ariz. Aug. 22, 2011).

Punitive damages are also not available against public entities or public employees acting within the scope of their employment under Arizona law. Ariz. Rev. Stat. § 12-820.04 (1984); *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 925-26 (D. Ariz. 2019). While "punitive damages arising under state law claims are not recoverable against public employees acting within the scope of their public responsibilities[,]" *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2018 WL 2464111, at *2 (D. Ariz. June 1, 2018), punitive damages are allowed under § 1983 "when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others," *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

In Plaintiffs' First Amended Complaint ("FAC"), they allege that Ibarra and Flores were working within the scope of their employment when they committed their wrongful acts. (Doc. 8, ¶ 27 at 9) The FAC states:

> [The District] is vicariously liable for the intentional misconduct of its employees. Mr. Ibarra and Mr. Flores used apparent authority to accomplish their wrongful acts are responsible [sic] for Mr. Ibarra's and Mr. Flores' actions because Mr. Ibarra and Mr. Flores committed the acts during the scope of their employment. [The District] had constructive knowledge of Mr. Ibarra's and Mr. Flores [sic] acts because [the District] had investigated sexual harassment before at [the District] but took no meaningful action to eradicate the sexually hostile environment[.]

(Doc. 8, ¶ 27 at 9) Moreover, the Arizona Court of Appeals ruling that Plaintiffs reference to support the argument that they are entitled to punitive damages fails to involve any government entity or public employee acting with the scope of his or her employment. *See Johnson v. Pankratz*, 2 P.3d 1266 (Ariz. Ct. App. 2000). Accordingly, Defendants' motion for partial summary judgment on the issue of punitive damages is granted, and Plaintiffs are precluded from seeking punitive damages on any of their claims at trial.

## II. Defendants' Motion to Preclude Testimony

In Defendants' motion to preclude testimony regarding causation from Plaintiffs' expert treating physicians, Defendants argue that Mendoza and Salazar's treating physicians should be precluded from offering expert opinion testimony regarding the cause of Plaintiffs' medical conditions at trial. (Doc. 90) Defendants argue any such causation testimony from the physicians would be beyond the treatment rendered to Plaintiffs, Plaintiffs failed to disclose the necessary written expert reports under Federal Rule of Civil Procedure 26(a)(2), and that the treating physicians testified that they did not have any opinion as to the cause of Plaintiffs' medical conditions. *Id*. at 1. In response, Plaintiffs argue that *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), holds that they are exempt from providing Defendants with written expert report, but they assert that they have no objection to the granting of Defendants' motion—and that they will not call the physicians to testify at the trial—as the physicians' testimony failed to demonstrate that Defendants caused Plaintiffs' medical conditions. *Id*. at 2.

In *Goodman*, the Ninth Circuit addressed a similar issue concerning treating physicians and whether expert disclosures were required when a physician testifies to opinions beyond the usual scope of a physician's testimony. The court concluded, in pertinent part:

> Federal Rule of Civil Procedure 26(a)(2) requires a party to timely disclose a written report of a witness "if the witness is one retained or specially employed to provide expert testimony in the case . . . ." Generally speaking, treating physicians are excused from this requirement. They are a species of percipient witness. They are not specially hired to provide expert testimony; rather, they are hired to treat the patient and may testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report.
>
> . . . .
>
> We hold today that when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2).

644 F.3d 817, 819–20 (9th Cir. 2011).

Taking Plaintiffs' concessions at face value, the Court finds Plaintiffs were not required to provide written reports under Rule 26(a)(2) from Mendoza's and Salazar's treating physicians, as Plaintiffs did not intend to call the physicians as experts to opine about the cause of their injuries. Notwithstanding this finding, Defendants' motion to preclude testimony is granted, and Plaintiffs are precluded from calling Mendoza's and Salazar's treating physicians to offer expert causation testimony at trial.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Preclude Testimony Regarding Causation from Plaintiffs' Expert Treating Physicians (Doc. 90) is GRANTED, and Defendants' Motion for Partial Summary Judgment Regarding: (i) Count Two as to Mendoza; (ii) Count Five as to Mendoza; (iii) Count Six as to Lionel Salalzar [sic]; and (iv) Request for Punitive Damages (Doc. 91) is GRANTED IN PART AND DENIED IN PART. Plaintiff Mendoza's Title VII retaliation and IIED claims are DISMISSED WITH PREJUDICE.

Mendoza's Title VII hostile work environment claim against the District, Salazar's Title VII hostile work environment claim against the District, Salazar's Title VII retaliation claim against the District, Mendoza's common law battery claim against Ibarra and the District, Salazar's common law battery claim against Flores and the District, Mendoza's common law assault claim against Ibarra and the District, Salazar's common law assault claim against Flores and the District, Salazar's IIED claim against Flores and the District, and Mr. Salazar's loss of consortium claim against Flores and the District will proceed to trial. At trial, Plaintiffs are precluded from seeking punitive damages on any of their claims and Plaintiffs' treating physicians are precluded from offering expert causation testimony.

Dated this 17th day of March, 2021.

_____
Honorable Cindy K. Jorgenson
United States District Judge